# IN THE UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| IN RE MELT BAR AND GRILLED, INC.<br>*Debtor* | CASE NO. 24-50879<br>JUDGE KOSCHIK<br>CHAPTER 11<br>SUBCHAPTER V |

### VERIFIED STATEMENT OF MATTHEW FISH IN SUPPORT OF MOTIONS TO USE CASH COLLATERAL AND TO PAY CERTAIN WAGE CLAIMS

1. He makes this verified statement that Melt Bar and Grilled, Inc. as Debtor and Debtor-in-Possession ("Debtor") and pursuant to the restrictions and requirements imposed therein by the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure and the Local Rules of this Court in support of the Debtor's Emergency Motion for Authority to Use Cash Collateral, to Provide Adequate Protection, to Pay certain Food Vendors Prepetition Claims in the Ordinary Course of Business and Request for Immediate Hearing [Doc. ] ("Cash Collateral Motion") and its Emergency Motion For Order (A) Authorizing (i) Payment Of Pre-Petition Wages, Salaries And Employee Benefits, (ii) Reimbursement Of Employee Business Expenses And (ii) Payment Of Other Employee-Related Amounts And (B) Authorizing Applicable Banks And Other Financial Institutions To Receive, Process, Honor And Pay All Checks And Drafts Drawn And Utilize Its Existing Payroll Account To Process Transactions [Doc. ] (Wages Motion").

2. The Debtor was founded in 2006, and I am its majority member and its president. The Debtor currently owns and operates four restaurants in Ohio: one in Akron, one in Columbus, one in Lakewood, and one in Mentor. The Debtor currently employs approximately 91 people both on a salary and an hourly basis.

3. The Debtor opened for business on September 22, 2006, at its Lakewood location. The Debtor earned accolades from guests and the local media almost immediately. The Debtor received national attention in 2009 and 2010 appearing on the Food Network program "Diners,

Drive-ins & Dives" and The Travel Channel's program "Man vs. Food." As its popularity grew, the Debtor's Lakewood restaurant expanded twice; a second dining room was added in an adjacent storefront in 2008, and an outdoor patio was added in 2017.

4. The Debtor began a self-funded expansion in 2010 with a second location in Cleveland Heights. In 2011 a third location was opened in Independence. To better manage its operations and to supply consistent product to all its locations the Debtor opened a centralized headquarters and processing facility known as "the commissary" in Cleveland in 2011. SBA loans were secured through Huntington National Bank ("HNB") in 2012, that enabled the Debtor to launch more expansion plans. Mentor opened in 2012 followed by two Columbus locations in 2013 and 2014. Akron opened in 2016 and Cedar Point, Avon, Dayton and Canton locations all opened in 2017. This brought the total number of locations to thirteen, which included three satellite licensed locations.

5. The Debtor thrived through 2018, 2019 and into early 2020. At its peak the Debtor employed over 350 people and had annual gross sales of over $18 million. In early 2020 more expansion plans were being made for the near future.

6. However, this all changed on March 16, 2020, when health orders issued due to the COVID-19 Pandemic shut down Ohio restaurants for full-service dining. The Debtor eliminated full-service dining and went to take-out and delivery for 14 weeks. After slowly re-opening its dining rooms, the Debtor was back to full-service operation by August 2020. However, sales volumes never returned to pre-pandemic levels. The increased cost of goods and labor and major shifts and changes in the service industry have hurt the Debtor's operations tremendously.

7. The Debtor received assistance from the SBA via the Paycheck Protection Program ("PPP") and an EIDL loan. After these programs ended, the Debtor's net income was still too

low to support its debt load, operational expenses and lease obligations at all locations. Therefore, hard decisions had to be taken to close some locations and reduce corporate overhead. A forbearance agreement was entered into with HNB in early 2023 that temporarily cut is debt payments in half, but even that was not enough.

8. By filing this bankruptcy case the Debtor seeks to shed debt accumulated during the company's tremendous growth period from 2010-2019, and to return to debt levels sustainable by its current operations to ensure the Debtor's immediate survival and long-term future success.

9. In the ordinary course of its business, the Debtor issues payroll checks on a weekly basis. The Debtor pays its employees one week in arrears. The payroll period begins on Monday and ends on Sunday. The aggregate gross weekly payroll to all employees of the Debtor is approximately $50,000.00 but varies from week to week because turnover and because some of its employees are paid on an hourly basis and there may be overtime. An amount approximately equal to this sum is due and owing to Debtor's employees for the current pay period (the "Current Compensation"). This amount includes the Debtor's President Matt Fish, and his wife Jessica Fish who is a manager of the Debtor. The Debtor is not otherwise in arrears on its payroll and thus the Current Compensation is due and owing to Debtor's employees for services rendered within 180 days of the Petition Date.

10. An important element of the Employee Benefits is medical, dental and vision insurance, which Debtor offers to its salaried employees with more than 90 days service through a monthly payment to ("Health Benefits"). Amounts are deducted from employee paychecks for each employee's premium amount by the Debtor who then pays for the insurance monthly. Employees and their families rely on the Debtor to provide this benefit. Any failure to pay these amounts would be injurious to employee welfare, morale and expectations.

11. The Debtor uses a payroll service Restaurant 365 to process its employee paychecks. Restaurant 365 deducts from the employees' paychecks (a) payroll taxes and the Debtor's and the employees' portion of FICA and unemployment taxes ("Employee Tax Deductions"). Restaurant 365 generates a net paycheck for each employee, and forwards amounts equal to the Employee Tax Deductions to appropriate third-party recipients. In conjunction with its employee payroll system, the Debtor prepares its payroll in house which are drawn against its General Operating and Payroll account at KeyBank ("Key" and "Key Payroll Account"). Due to the commencement of this chapter 11 case, funds were deducted from employee paychecks but may not have been forwarded to appropriate third-party recipients.

12. The Debtor believes that if it does not pay the Employee Amounts, some or all the Debtor's employees would suffer serious personal hardships, which in turn would cause them to seek other employment and/or no longer make their services available to the Debtor. Given the importance of the employees to the Debtor's operations, any significant loss of their services would severely hamper the operation and management of the Debtor's business and potentially result in the severe erosion of its value.

13. The Debtor has eight individual loans with HNB which are described in the Cash Collateral Motion (collectively the "HNB Loans"). The approximate amount owed on the HNB Loans is $1.8 million. The HNB Loans are secured by a blanket security interest in all assets of the Debtor as described in the Cash Collateral Motion.

14. T The value of the deposit accounts on the petition date was approximately $12,345.97. The Debtor has $4,072.96 in outstanding accounts in the form of unremitted Door Dash, UberEats and other payments.

15. It is imperative that Debtor obtain authority from this Court, in accordance with 11 U.S.C. § 363, to use said cash collateral to maintain its business operations, meet payroll obligations, to protect the jobs of its employees, to protect its value as an ongoing operation. Certain related expenses, such as health insurance, must also be maintained and paid.

16. The Debtor also needs funds to pay expenses of administration, including, without limitation, (i) operating expenses and (iii) allowed fees and reasonable expenses of professionals retained in this case and the Subchapter V Trustee. The immediate cash needs of Debtor are set forth on the attached budget projection to the Cash Collateral Motion.

17. I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

/s/ Matthew Fish
Matthew Fish
Executed on June 14, 2024